# Parker's Appeal.

1. Assets are not transmitted to the administrator of the domicil when there are claimants within the jurisdiction of the ancillary administration.

2. Implied trusts to executors result from the intention of the testator, to be gathered from the terms and provisions of the will.

3. The bequest of the use of a thing or the product or interest of a fund is a bequest of the thing or fund itself.

4. A bequest of a sum "the interest of which to be paid to her during life and the principal to her children at her death," is a direct bequest of the principal for life, and the legatee is entitled to receive it on securing interest of those in remainder, according to the 49th section of the Act of February 24th 1834.

5. Where there are no exceptions to an account, the Orphans' Court may decide a question of law, without an auditor; and may appoint an auditor to make distribution without exceptions.

6. Unconscionable charges by auditors should be guarded against by the court below. The compensation should be according to the auditor's work, not the ability of the estate.

7. The Orphans' Court, under the Act of October 13th 1840, may entertain a bill of review notwithstanding a decree of affirmance by the Supreme Court.

March 26th and 27th 1869. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ. WILLIAMS, J., absent.

Appeal, No. 281, to January Term 1869, from the decree of the Orphans' Court of Philadelphia on the estate of Isaac Brown Parker, deceased.

The decedent died in Burlington, New Jersey, on the 19th of September 1865, having made his will, dated August 18th of the same year. The will was proved in New Jersey October 5th, and letters testamentary issued to John Brown Parker and Frederick Watts, the executors named in it. Assets of the estate were in Pennsylvania, and on the 30th of November 1865 administration c. t. a. was granted in Philadelphia to the executors.

Amongst other provisions of his will, the testator bequeathed to his daughter Mary, wife of Johnston Moore, the sum of $50,000, the interest to be paid to her during life, and the principal to her children at her death. To his daughter Euphemia Grubb, $50,000 in like manner. To his son John Brown Parker, $60,000, to "be considered a settlement of all accounts between him and me." To each of the four children of his son William B. Parker, $20,000, as they respectively arrive at full age.

To his daughter Emeline Johnston, $50,000, she to receive the interest for life, and then the principal to her children. To his daughter Marcia R. Freeman, $50,000 in the same manner.

To his daughter Virginia Marie, $50,000 in the same manner.

He gave to his executors power to sell and convey all his real estate, and privilege to any of his legatees who should desire it to take any part of his real estate at a valuation to be fixed by three

men chosen by his executors. He directed that the residue of his estate should be divided between his children, Mary Moore, Euphemia Grubb, John Brown Parker, Marcia Freeman, Thomas B. Parker, Virginia Marie and Emeline Johnston ; the residuary bequests to Mary, Euphemia, Thomas B., Marcia and Virginia to be to them for life, with remainder to their children after their death.

He fixed the sum of $8000 as compensation to the executors, and directed that it should not be "required of them to give security for the execution of the will."

The inventory of all the assets, amounting to $1,618,113.43, was filed in New Jersey. On the 15th of June 1867 Mary Moore and Euphemia B. Grubb, with their husbands, presented a petition to the Orphans' Court of Philadelphia setting forth the grant of administration in Pennsylvania, and that the greater portion of the assets were in that state, and prayed for a citation to the executors requiring them to settle an account in the register's office in Philadelphia. John B. Parker, one of the executors, answered the citation, and set out the facts as above given and that soon after the testator's death the petitioners for the citation obtained an injunction from the Court of Common Pleas of Cumberland county restraining the executors from intermeddling with the estate of the testator in Pennsylvania, that the injunction remained in force until September 1866, preventing the executors until that time from exercising any control of the estate in Pennsylvania, and since then, being less than a year, they have endeavored to the best of their ability without delay to settle the administration of the estate ; that under the advice of counsel an account had not been filed in the time fixed by law, because they hoped shortly to be able to settle a final account. The executor further answered as follows :—

"Under the circumstances aforesaid, I am advised that it is within the discretionary powers of this court either to distribute the fund raised under the letters granted in Pennsylvania, or to remit the parties to the forum of the domicil of the testator for that purpose. I respectfully ask that the latter course be adopted.

"1. To prevent the embarrassment of adjusting credits, and the possible conflict of orders between the forum of the domicil and the local forum.

"2. To avoid the charge upon the estate of a partial distribution in Pennsylvania.

"3. Because the executors have not yet had control of all the Pennsylvania assets for one year, by reason of the writ of injunction mentioned.

"4. Because the parties upon whose prayer the citation from this court issued have themselves resorted to the forum of the domicil, and are therefore, as to the local tribunal, in no sense domestic claimants.

[Parker's Appeal.]

" If, therefore, the reasons against settling a separate account of the Pennsylvania assets, which have seemed to me expedient, and which I thought my duty as executor required me to set forth, appear otherwise to this court, I willingly submit the course of the executors to its orders and directions."

In the Orphans' Court, Brewster, J., after stating the facts and referring to the objections in the answer, delivered the following opinion on the application :—

" We have considered these objections, and the able arguments submitted, and we are of opinion that, notwithstanding all that has been suggested, these petitioners are entitled to our decree for an account.

" The principle which controls this case is clearly announced by Gibson, C. J., in Mothland *v.* Wireman, 3 Penna. Rep. 188, in these words :

" ' An administrator here, though admitted to be but auxiliary to the administrator at the place where the decedent was domiciled, is bound to remit the assets to be administered there, *only in case there are no domestic claimants, in the character of creditors' legatees or next of kin ;* but that where these appear, the assets are to be retained for administration, according to our own laws.'

" The question has been considered in a number of cases, there being, generally, two sets of administrators, one of them being called the *administrator domicilii*, the principal and the primary administrator, and the other being variously styled the administrator of the *situs*, the ancillary, and the auxiliary administrator. But as Lewis, J., aptly said, in his learned opinion, (Dent's Appeal, 10 Harris 519,) ' It does not matter what terms are used to designate the distinction in *fact*, as to the objects of the different administrations, so that we guard ourselves against the conclusion that there is a distinction in *law* as to the rights of the parties entitled as distributees.'

" And as was said in Harvey *v.* Richards, 1 Mason R. 381, ' There is no magic in words ; and each of these administrations may properly be considered as a *principal* one, with reference to the limits of its exclusive authority ; and each might, under circumstances, justly be deemed an *auxiliary* administration.'

" It would be wearisome and useless to attempt the task of extracting from all the reported cases. Even those in our own books present an array of burdensome authority. The student will find the law upon this subject fully discussed and learnedly illustrated in Brodie *v.* Bickley, 2 Rawle 431 ; Miller's Estate, 3 Id. 312 ; Willing *v.* Perot, 5 Id. 264 ; Short's Estate, 4 Harris 66 ; Commonwealth *v.* Smith, 5 Barr 142.

" The principle deducible from all the cases seems to be, that while the law of the domicil is to control the succession to the personalty, the administration of the estate must be in that jurisdic-

[Parker's Appeal.]

tion wherein it is held under lawful authority: Story's Conflict of Laws, ch. 13, sec. 518.   So rigidly was this rule adhered to In the goods of the Duchesse d'Orleans, 28 Law J. Rep. N. S., Prob. and M. 129, 1 Swabey and Tristram 253, that the English court refused to grant administration to a minor, although, by the law of the domicil, the minor might be entitled to administer to the estates of the deceased.

" In this estate, one of the petitioners is a resident of this state, both of the executors also reside here ; two other devisees, making four in all out of nine parties in interest, are within our jurisdiction.   Here, also, as before observed, is the great bulk of the property.   We do not decide this question, however, upon the array of figures, for if there were but a single claimant here we cannot close our doors to him and send him into another jurisdiction, it might be thousands of miles distant, to obtain his share of the Pennsylvania assets.

" We do not apprehend that there can be any conflict of orders between the two forums, and the charge of two partial settlements ought not to exceed the cost of a lumping distribution. ¿

" Nor is the fact conclusive against these petitioners that they have cited the executors, and procured a decree for an account in the court of the domicil.

" That was their right or it would not have been so decreed, and it is no estoppel here, for the judgments operate upon different assets.

" And now, upon consideration of the petitioners' answers, examiner's report, and arguments of counsel for petitioners and respondents, it is ordered' that the respondents file an account within thirty days from the service upon them of notice of the entry of this decree."

On the 4th of December 1867, the executors filed an account with the surrogate of Burlington county, New Jersey, which included all the assets of the testator without regard to the jurisdiction in which they were found.   By this account it appeared that the balance in their hands was $1,521,051.71.   Of the credits claimed in New Jersey were certain evidences of debt, amounting to $14,802.50, which had not been collected on account of not having arrived at maturity and for other causes, but which were not alleged to be worthless.   It also included payments to the legatees.   This account was, by the Orphans' Court of Burlington county, New Jersey, " allowed in all things as reported."   The account in Pennsylvania was filed February 13th 1868.

By this account there were credits for payments to the legatees, and the balance in their hands of Pennsylvania assets was shown to be $542,377.59.   No exceptions were filed to it.   It was referred to James Pollock, Esq., " to audit, settle and adjust the same, and report distribution."

11 P. F. Smith—31

[Parker's Appeal.]

The auditor, after examining and adjusting the account, found that the assets for distribution in Pennsylvania were $874,981.75, and in New Jersey $973.090.36.

The auditor reported, amongst other things:—

1. That the assets in Pennsylvania should be distributed here pro ratâ with the assets in New Jersey.

2. That the bequests to the daughters are gifts to them of the principal sums for life with a trust for their children after their death, and the legatees are entitled to receive them on giving security under the direction of the Orphans' Court.

3 and 4. That interest from the testator's death should not be allowed on the pecuniary legacy of John Brown Parker, one of the executors, but should be allowed on the pecuniary legacies of the other legatees.

5. That the items of uncollected claims above mentioned, amounting to $14,802.50, in the New Jersey account, should not be estimated in making the distribution.

6. That the expenses of the audit should be charged to the estate, and not to Mrs. Grubb and Mrs. Moore, as was asked for by the executors, on the ground that their proceeding by citation was unnecessary and vexatious.

The auditor distributed the estate in accordance with these principles; and the respective parties filed exceptions to the report.

On the 19th of December 1868, the Orphans' Court (Allison, P. J.) dismissed the exceptions and confirmed the report.

The executors appealed to the Supreme Court, and in their 6th specification assigned for error the confirmation of the report in regard to the foregoing finding of the auditor; and also,

7. That the court erred in referring the account of the executors to an auditor, no exception to its accuracy or lawfulness having been filed by any one interested therein.

*E. H. Hanson* and *Daniel Dougherty*, for appellants.—The discretion exercised by the Orphans' Court in refusing to remit the distribution to New Jersey was so unwisely exercised that the Supreme Court should correct it: Act of June 16th 1836, § 2, Pamph. L. 683, Purd. 769, pl. 51; Dent's Appeal, 10 Harris 514; Harvey *v.* Richards, 1 Mason 381; Mothland *v.* Wireman, 3 Penna. R. 185; Stokely's Estate, 7 Harris 476. The Orphans' Court of New Jersey first obtained jurisdiction: Freeman *v.* Howe, 24 Howard 450. The New Jersey account having included the whole estate and having been confirmed by decree of the proper court there, every item of the account and the balance are fixed and it is conclusive on the courts of this state: Yeager's Appeal, 10 Casey 173; Ripple *v.* Ripple, 1 Rawle 386; Ohio *v.* Hinchman, 3 Casey 479; Constitution of

[Parker's Appeal.]

United States, art. 4, § 1; Hampton *v.* McConnel, 3 Wheat. 234; Christman *v.* Russell, 5 Wallace 290; Baxley *v.* Linah, 4 Harris 241; Duchess of Kingston's Case, 2 Smith's Leading Cases 573 (and the cases there cited); Thompson *v.* Roberts, 24 Howard 233. By the bequests to the daughters they are to be paid interest during life, these payments are of course to be by the executors and therefore they must retain the principal: Bush *v.* Allen, 5 Modern 63; Malim *v.* Keighley, 2 Vesey, Jr. 335; Knight *v.* Boughton, 11 Clark & Fin. 513. The power to the executors to sell gave them the seisin of the real estate: Act of February 24th 1834, § 13, Pamph. L. 75, Purd. 282, pl. 62; Shippen *v.* Clapp, 5 Casey 265; Parkinson's Appeal, 8 Id. 455. That the testator has not named his executors as the trustees is of no importance: Vanartsdalen *v.* Vanartsdalen, 2 Harris 384; Oates *v.* Cooke, 3 Burr. 1684; Eyrick *v.* Hetrick, 1 Harris 488; King *v.* Mitchell, 8 Peters 326. An active duty devolved on the executors: Barnett's Appeal, 10 Wright 392; Shankland's Appeal, 11 Id. 113; Wickham *v.* Berry, 5 P. F. Smith 70; Bacon's Appeal, 7 Id. 504.

The Act of February 24th 1834, § 4, Pamph. L. 82, Purd. 303, pl. 184, directs payment by the executors upon security only where "property" is bequeathed; here it is merely a direction to pay interest, and where an investment is directed as here the implication of entire control by the gift of the interest does not arise: Silknitter's Appeal, 9 Wright 365.

Where the bequest is of a sum to be paid annually for life, the payment is to be made at the end of the first year from the testator's death: Eyre *v.* Golding, 5 Binn. 472; Hilyard's Estate, 5 W. & S. 30.

John Brown Parker's legacy was to be a settlement of all accounts, and where a legacy is in satisfaction of a debt it bears interest from the testator's death: Clark *v.* Sewell, 3 Atkyns 96; 2 Roper on Legacies 1245.

The appointment of auditors is under the Act of March 29th 1832, § 16, Pamph. L. 193, Purd. 300, pl. 166. The examination referred to in this section does not refer to vouching the account; that is by the register: Act of March 15th 1832, § 29, Pamph. L. 143, Purd. 299, pl. 161; Rhoads's Appeal, 3 Wright 186. Philadelphia is exempted from the Act of 14th April 1835, § 1, Pamph. L. 275, Purd. 300, pl. 167.

The Orphans' Court has power over the costs: Stokely's Estate, 7 Harris 476; Show *v.* Conway, 7 Barr 136; Spangler's Estate, 9 Harris 335; Peters's Estate, 1 Philad. Rep. 581.

*W. L. Hirst* and *Strong*, for appellees.—Even in cases of intestacy, administration and distribution are effected by the *lex situs* whenever there are domestic claimants. The reason for this

is stronger when the rule of distribution is a will. Legatees and next of kin are claimants who will not be sent to a foreign juris-diction: Mothland *v.* Wireman, 3 Penna. R. 188; Stokely's Estate, 7 Harris 476. The New Jersey account does not purport to be a final one.

The opinion of the court was delivered, May 11th 1869, by

THOMPSON, C. J.—The cases of Mothland *v.* Wireman, 3 Penna. 188, and Dent's Appeal, 10 Harris 514, abundantly show that assets are not to be transmitted to the administrator or executor of the domicil when there are domestic claimants or claimants within the jurisdiction of the ancillary administration. It would be a waste of time to discuss what we see so ably discussed in the opi-nion of Lewis, C. J., in the last-mentioned case.

There are a number of legatees under the will of Isaac Brown Parker in this Commonwealth, and it being admitted that there are no debts to be paid in New Jersey, there is no reason what-ever for sending the Pennsylvania assets there for distribution, especially as the same persons are accountants in both states. The rule against transmission when there are domestic claimants, cre-ditors or legatees, is too firmly settled upon authority, and is not to be departed from or doubted. The auditor and court were entirely right in maintaining, as they did, this principle.

Implied trusts to executors result from the intention of their testators, to be gathered from the terms and provisions in wills, and have always been more or less common.

Several English cases have been cited, and among them Bush *v.* Allen, 5 Mod. 63, and South *v.* Allen, Id. 101, in which trusts to executors are implied from provisions very similar to the case in hand, and it is not improbable that we might feel ourselves im-pelled to imply such a trust in this and cases like it, were it not that the legatees for life are placed on the footing of trustees for those in remainder, in regard to the thing, or the principal of the fund devised for life, by the 44th section of the Act 24th of Febru-ary 1834. That act requires legatees to give security in the Orphans' Court having jurisdiction of the account of the executors, to protect the interest of those in remainder, before the executors shall deliver the property or pay over the money to the legatees for life, and which security, like that of trustees by appointment, is liable to the supervision of the Orphans' Court at all times. The existence of the law is a reason for inferring that no trust in the executors was contemplated by the testator in this case. But these considerations, while they persuade us, we will not say they rule our decision, for it rests also upon our own precedents. Our courts follow the rule, whenever it is applicable, that " the bequest of the use of a thing, or the product or interest of a fund, is as a rule to be regarded as a bequest of the thing itself."

The bequests in question, although restricted in extent, are direct as to the *corpus*. They are: "I bequeath to her (the legatee) $50,000, the interest of which to be paid to her during life, and the principal to her children at her death." This is a direct bequest of the principal for life, and is not to be overcome by the implication arising from the words "to be paid" or "shall be paid," that it is to be paid by the executors, and thus continue their duties to an indefinite period. Implications often yield to counter implications, and always to positive and clear directions. These implicative words, or claimed to be such, seem to me to depend mainly on the use to which the interest is to go, rather than an implication of a trust. As the principal fund was necessarily intended to be invested in some way in order to produce an interest, it was not an uncommon mode of expression to say it was "to be paid" to the legatee entitled to receive it. If invested, the interest would be paid by somebody to the party entitled, and in this sense we may regard the words to have been used, especially in the presence of the clear bequest of the fund to the legatee. The cases of Rodgers *v.* Rodgers, 7 Watts 15, and Clevenstine's Appeal, 3 Harris 495, are cases like the present; they were bequests of the principal, coupled with a trust, the interest to be enjoyed for life on giving security under the Act of Assembly to preserve the principal or property for children. The learned auditor was entirely right, therefore, in the view he took of these bequests, and in holding the principal payable to the legatees for life, on giving security, as required by the Act of Assembly.

We see no good reason for setting aside the decree in this case on the ground that a credit of $14,802, uncollected bonds, in New Jersey, was not credited to their account in this state, instead of being included in their account in adjusting the proportions to be distributed under the account here. I see no difficulty in correcting that, in the account not yet settled in New Jersey, or in the final account of the executors. If they account for moneys of the estate here, strictly within the jurisdiction of the surrogate in New Jersey, there cannot be a doubt but that it would be allowed as a credit there, a final account of the New Jersey assets not having passed, and the executors and claimants being the same in both states.

Nor do we think we ought to reverse the decree of distribution in the Orphans' Court, because it was made on the report of an auditor, the decree itself being right. There being no exceptions to the account, the court might have decided the questions of law in the case without an auditor. Still we see nothing in the Acts of Assembly, applicable to the Orphans' Court of this county, to prevent the appointment of an auditor or auditors to make distribution in the absence of exceptions; while there is, in other parts

of the state, by the Act of 14th April 1835, § 1: Rhoads's Appeal, 3 Wright 187. Even if we were in error as to this, the report of the auditor would not vitiate the decree predicated of it. The only redress would be to strike off the compensation allowed to the auditor. The business of the Orphans' Court of Philadelphia is so large that it is hardly possible for the court to get along without the aid of auditors, and we do not see that the court are confined to the cases where there are exceptions in appointing them; but unconscionable charges should be guarded against. The auditor should be allowed compensation according to his work, and not measured by the ability of the estate to pay.

We do not see any solid reasons for charging the costs incident to the citation in this case upon the shares of Mrs. Moore and Mrs. Grubb in the estate of their father.

More than a year had elapsed without an account filed by the executors, consequently *they were liable to a citation to quicken their movements.* It enured to the benefit of all the heirs; and because the executors were not held to have been in default, owing to certain proceedings in equity, and therefore not liable to the costs and expenses of it, that was no reason they should interfere to put the costs on the heirs who acted, instead of upon all equally benefited. This portion of the decree was unexceptionable under the circumstances. The decree of the Orphans' Court appearing to be right in all the particulars complained of it is affirmed, the costs to be paid out of the estate, and the appeal is dismissed.

After the foregoing decision John Brown Parker, acting executor and one of the legatees, on the 9th of September 1869 filed a bill of review in the Orphans' Court of Philadelphia county, setting forth that there were errors in the report upon which the decree was founded, and in the decree itself, which, if not corrected, would be injurious to his rights and interests; and prayed the court to review the said report and decree thereupon, and to grant a rehearing of that part thereof, alleged to be erroneous, to cause said errors to be corrected, and the report and decree to be modified, and for such relief as equity might require, in accordance with the Act of Assembly.

On December 7th 1869 he filed his petition in the Supreme Court, setting forth his foregoing application to the Orphans' Court, and that in order to remove any technical objection against the consideration by that court, of the petition for review, and to prevent a seemingly improper interference by the Orphans' Court, in its action upon the petition, with a decree of the Supreme Court, prayed for a rule to show cause why there should not be added to the decree of this court, these words:—

" Any party in interest having the right, before the payment of the sums awarded by the auditor's report, to correct by petition

[Parker's Appeal.]

or bill of review, in the Orphans' Court, mistakes and errors, not of judicial judgment, apparent on the face of the account, and report of the auditor, if any such there are."

A rule to show cause was granted, and on the return thereof,

*E. H. Hanson* and *Daniel Dougherty* argued in support of the rule.—The bill of review was filed in the court below, under the Act of October 13th 1840, § 1, Pamph. L. of 1841, p. 1, Purd. 301, pl. 173.

In Courts of Chancery, additions which do not affect the principles of the decree, but correct evident mistakes, are allowed even after action taken under the decree: Eyles *v.* Ward, 1 Dickens 58; Spearing *v.* Lynn, 2 Vernon 376; Newhouse *v.* Metford, 12 Vesey 456; Tomlins *v.* Polk, 1 Russell 475; Shine *v.* Gough, 2 Ball & Beatty's Rep. 33; Hughes *v.* Jones, 26 Beav. 24; Viney *v.* Chaplin, 3 De Gex & Jones 282. Where errors in a decree are obvious, the court will rectify them, even after enrolment: Fearon *v.* Desbrioay, 21 L. J. Chan. 511, 16 Jurist, part 1, p. 164.

The courts of law have a similar power of amendment: Short *v.* Coffin's Executor, 5 Burr. 2730; George *v.* Howard, 7 Price 661.

The power to correct mistakes in decrees exists in the inferior courts of this Commonwealth: Crutcher *v.* Commonwealth, 6 Wharton 340; Chew's Appeal, 9 W. & S. 151; Smith *v.* Hood, 1 Casey 218.

Permission for review by the lower court should be first given by the Supreme Court: Southard *v.* Russell, 16 Howard 547.

*W. L. Hirst* and *Strong* showed cause against the rule.—They contended that amendment must be made during the term at which the decree was passed, and that when the term had gone by, such an addition, as is here asked for, could not be allowed.

The opinion was delivered January 22d 1870.

PER CURIAM.—We are clearly of opinion, that the Orphans' Court can entertain a bill of review, under the Act of 1840, notwithstanding the decree of affirmance of this court. The amendment asked for is, therefore, unnecessary.

Rule discharged.