Robert Laughlin, Charles A. McManus and William King, Trading as Laughlin & McManus, to the use of John S. Hopkins, Receiver, Appellants, *v.* William Solomon, Executor of the Last Will and Testament of Isaac Solomon, deceased.

*Executors and administrators—Suit against foreign executor.*

In Pennsylvania a foreign executor within the jurisdiction of the Pennsylvania courts is liable to suit by a resident creditor of his decedent, and such suit will be sustained unless it would trench unduly on the jurisdiction of another court already attached, or would expose parties subject to such jurisdiction to inequitable burdens: Swearingen v. Pendleton, 4 S. & R. 389; Evans v. Tatem, 9 S. & R. 252; Bryan v. McGee, 2 Wash. C. C. 337 followed; Magraw v. Irwin, 87 Pa. 139 distinguished.

Argued Jan. 12, 1897.   Appeal, No. 467, Jan. T., 1896, by plaintiff from judgment of C. P. No. 3, Phila. Co., March T., 1896, No. 386, sustaining demurrer to statement.   Before STER-RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Reversed.

Assumpsit on promissory notes.

The defendant demurred to the statement:

1. Because the aforesaid receiver has no jurisdiction to sue for or recover accounts outside of the jurisdiction of the state of Pennsylvania, and the said executor was appointed by and subject to the courts of the state of Delaware, and there is no averment of an appointment of the said executor as ancillary administrator in the state of Pennsylvania, or any averment of any right to administer in Pennsylvania, but is subject to the courts of the state of Delaware, and any claim against the said estate must be sued out in said state, or service obtained upon some properly authorized administrator in Pennsylvania.

The court sustained the demurrer.   McMICHAEL, J. filing the opinion of the court.

*Error assigned* was in sustaining the demurrer.

*Thomas R. Elcock*, with him *Bernard Gilpin*, for appellant. —The case now under consideration comes before the court on a demurrer to the statement, so that it is admitted that the defendant is a resident of Philadelphia county.   Can it therefore be assumed by the court at this stage of the progress of the case that the executor has not assets of the estate in this jurisdiction which were either here when his testator died or brought here by the executor since ; in either of which cases there can be no doubt of the right of the plaintiff to maintain his action against the executor.   It is also true that by reason of the permanent and fixed character of the executor's citizenship and domicile in Philadelphia the personal property of the estate acquires a situs here, too.   In case of Lightfoot v. Bickley, 2 Rawle, 431, Mr. Chief Justice GIBSON said, as was held in Dowdale's Case, 6 Rep. 46, "An administrator may be sued in a foreign country, because the action transitory, follows his person, and the jury may inquire of assets in his hands at home or abroad."

The weight of authority in Pennsylvania is overwhelmingly in favor of the right of its citizens to sue an executor of a person dying in another state, provided the executor dies within the jurisdiction of the court in which the suit is brought: Swearingen v. Pendleton, 4 S. & R. 389; Evans v. Tatem, 9 S. & R. 252.

No paper-book or argument was offered for appellee.

OPINION BY MR. JUSTICE MITCHELL, February 22, 1897:

The general rule as stated in the text books is that an executor can only sue or be sued in his own forum: Am. & Eng. Ency. of Law, title Conflict of Laws, XIV. c. But in Pennsylvania the rule cannot be stated so broadly. Where any party invokes the assistance of a court, claiming to act en autre droit, he must show such a right as will be recognized by the forum, and as an executor or administrator's right to act for his decedent depends on his representative character conferred by letters testamentary, these latter cannot of course give authority beyond the jurisdiction of the officer granting them. Hence the deduction is plain that a foreign executor cannot sue in another tribunal by virtue of his foreign letters alone. But it is quite another step to say that he cannot be sued there.

The technical ground for refusing a right of action dependent solely on foreign letters testamentary is that it would be giving extra territorial force to the judgment or decree of a foreign court or officer, and an interference with the jurisdiction of our own courts. But the more practical ground is that of public policy to prevent assets from being taken out of the state to the possible injury of our own citizens, creditors, who might thus be forced to go to a foreign tribunal to obtain satisfaction of their claims. This is the ground on which it was put by Chief Justice GIBSON in Mothland v. Wireman, 3 P. & W. 185, where he said that such a rule was "indispensable to the protection of the domestic creditors." And that this is the ground on which the rule is enforced is shown by the cases on ancillary administration, which uniformly hold that the duty of the ancillary administrator here is to account to domestic creditors, and, after they are satisfied, to pay over the balance to the primary or domiciliary administrator: Miller's Estate, 3 R. 312; Parker's Appeal, 61 Pa. 478; Barry's App., 88 Pa. 131. Some

cases hold that the ancillary administrator may distribute to foreign creditors who present their claims here, or where there are no foreign creditors, even to legatees : Dent's App., 22 Pa. 514; Del Valle's App., 3 Cent. Rep. 163; Welles's Estate, 161 Pa. 218. But these do not affect the general principle that after domestic claimants are protected, our courts will recognize the representative authority of a foreign administrator by turning over to him any surplus that may remain in this jurisdiction.

Pennsylvania has always been liberal in comity to other states. By the act of 1705 concerning the probate of wills, 2 Stat. at large, ch. 133, pp. 195–197, all letters of administration granted out of the province, being produced here under the seals of the courts or offices granting them, were declared as sufficient to enable the executors or administrators to bring actions in any court as if said letters had been granted here ; and no person proving a will or taking out letters of administration in any county of the province, was obliged to do so again in any other county, " wherever such testator's or intestate's estates may be." Following this act it was held in M'Cullough v. Young, 1 Bin. 63, that an administration granted in Maryland would enable the administrator to sue here, and this was followed in other cases noticed more particularly hereafter, though there is a notable absence of any reference to the statute, and the decisions are put on the ground of comity alone. In Brodie v. Bickley, 2 Rawle, 431, however, the statute was apparently overlooked entirely, GIBSON, C. J., saying " the authority of an administrator, under letters granted in a sister state, to meddle with the assets here, is an anomaly, produced by an unexampled spirit of comity in the courts of this state which will probably be attended with perplexity and confusion." The act of March 15, 1832, changed the law, and withdrew the authority of parties acting under foreign letters. But that act was held in Moore v. Fields, 42 Pa. 467, not to apply to a suit by a foreign administrator for assets which had never been subject to administration in this state, and subsequent statutes have exempted certain classes of property from the prohibition of the act of 1832. The course of decision and enactment on this subject is reviewed by our Brother DEAN in Shinn's Estate, 166 Pa. 121, and need not be further discussed here. It is referred to only to show that the policy of the state, both legislative and judicial, has not

been to enforce the common rule as to foreign administrators in all its breadth, even in regard to suits by them, and a fortiori in regard to suits against them which stand on a different footing. As to these the ground of the objection entirely fails. A suit by a Pennsylvania creditor against a foreign executor within this jurisdiction does not seek to take any assets away, to the prejudice of domestic claimants, but on the contrary enlarges the protection given by this sovereignty to its own citizens. Our cases accordingly show that such actions have been sustained, within the limitations required by due regard to the precedence of other courts as to matters within their jurisdiction, and the rights of executors and others answerable to such jurisdiction.

In Swearingen v. Pendleton, 4 S. & R. 389, the defendant, being executor in Virginia and also in Pennsylvania, was held liable here for assets in his hands without regard to whether they came to him here or in Virginia, and it was not a good defense that he had not yet accounted in Virginia. In Evans v. Tatem, 9 S. & R. 252, the defendant, being administratrix in Pennsylvania, was sued in Tennessee and decree entered against her. Suit then being brought here on that decree, and defendant pleading that as administratrix in Pennsylvania, she was not amenable to the courts of Tennessee, judgment was given against her, TILGHMAN, C. J., saying, "wherever he (the executor) goes he carries with him the obligation to administer the assets," and citing Swearingen v. Pendleton, supra, "it was held, that a suit might be sustained in Pennsylvania, against an executor who had administered (i. e. taken out letters testamentary) in Virginia; so that this point may be considered as settled." Bryan v. M'Gee, 2 Wash. C. C. 337, was a bill by a creditor of decedent to charge the administrator who demurred on the ground that he was administrator by letters in New Jersey and could only be held to account there, but the court said, "defendant having property in his hands belonging to the estate of Davis Magee may in equity be called upon for that property in any place."

In Brodie v. Bickley, 2 Rawle, 431, already referred to, the reaction began, and it was said by GIBSON, C. J. that, the administrator's commission (i. e. his representative capacity) "extends only to assets of which the ordinary had jurisdiction;

and it constitutes him a representative of the intestate no far-
ther than as regards the administration of those particular
assets," but he adds also, "As was held in Dowdale's Case, 6
Rep. 46, an administrator may be sued in a foreign country;
because the action being transitory follows his person, and the
jury may inquire of assets in his hands at home or abroad. But
the judgment would not affect any assets the administration of
which had not been committed to him." What however was
decided in the case was that an administrator was not charge-
able with assets in another jurisdiction never within his con-
trol, and there was no such privity as would support an action
of debt against an administrator here on a judgment against a
foreign administrator of the same intestate.

The same principle was again enforced in Mothland v. Wire-
man, 3 P. & W. 185. Chief Justice GIBSON again asserted the
merely local authority of an administrator and repeated his dis-
approval of the extent to which comity had been carried. But
the decision went only to the extent that an administrator here
was not chargeable with assets in the hands of a co-administrator
in Maryland, which had never been within his control. The
second paragraph of the syllabus is incorrect in stating that he
would not be chargeable if he had obtained possession of the
Maryland assets, for although Chief Justice GIBSON in the opin-
ion says, "granting the assets to have actually come to his
hands, I am unable to see why he should account for them
here;" yet this was arguendo only, and there was no such fact
in the case, as is pointed out by our Brother DEAN in Shinn's
Estate, already cited. The next case, Magraw v. Irwin, 87 Pa.
139, was regarded by the learned court below as having over-
ruled Swearingen v. Pendleton, Evans v. Tatem and the cases
heretofore cited, and it is plain that the opinion leans, as does
Chief Justice GIBSON's in Brodie v. Bickley and Mothland v.
Wireman, against the earlier doctrine. But a careful considera-
tion of the facts shows that notwithstanding the unfriendly
attitude of the opinion, the authority of those cases is not over-
thrown. Magraw, a citizen of Maryland, died there, and letters
testamentary were granted there to his widow, who filed an
account and was awarded certain stocks and bonds of Pennsyl-
vania corporations, as legatee. These were the only assets
ever in Pennsylvania, and they were withdrawn by the executrix

under the authority of the acts of 1836 and 1850. Then the executrix died, and the defendant was appointed administrator cum testamento annexo, and, coming into Pennsylvania, was sued by another nonresident, a creditor of his testator. The opinion of this court, quoting the general rule that no action lies by or against an executor except in the forum of his letters testamentary, admits that it is in conflict with Swearingen v. Pendleton and Evans v. Tatem, and as already said indicates an unfriendly attitude to those cases, but continues by a discussion of the facts, and gives the reason of the decision as follows : " By a regular and valid decree those assets were taken out of her (the widow's) hands as administratrix and given to her as legatee. . . . It therefore follows that the succeeding administrator, the plaintiff in error, cannot be chargeable either here or elsewhere, with the assets thus administered and distributed." The decision therefore goes no further than the principle of Brodie v. Bickley and Mothland v. Wireman, that an administrator is not chargeable with assets in another state which have never been within his control, or to express it with special reference to the facts of the case, that a defense of plene administravit is good although the administration was in another state and by a prior executor. That principle is sound and in harmony with all our cases.

Notwithstanding the adverse criticism to which Swearingen v. Pendleton and the other cases have been subjected we regard them as of unshaken authority, and it must be taken as the rule in Pennsylvania that a foreign executor within the jurisdiction of our courts is liable to suit by a resident creditor of his decedent, and such suit will be sustained unless it trenches unduly on the jurisdiction of another court already attached, or would expose parties subject to such jurisdiction to inequitable burdens. The subject of defenses to such actions we are not called upon at present to discuss.

It follows that the demurrer should have been overruled. The docket entries show that an affidavit of defense was filed, but as it is not before us we cannot enter a final judgment.

Judgment reversed and record remitted for further proceedings.