**HERREN CANDY COMPANY,**
**A Partnership,**

v.

**The CURTISS CANDY COMPANY, Raymond G. Wiggins, James W. Lowe, Joseph D. Fields, and Aubrey H. Wood.**

**No. 5413.**

United States District Court
N. D. Georgia,
Atlanta Division.

March 8, 1957.

Gambrell, Harlan, Russell, Moye & Richardson, Atlanta, Ga., for plaintiff.

Spalding, Sibley, Troutman & Kelley, Atlanta, Ga., for defendants.

SLOAN, District Judge.

In the complaint here, in brief, plaintiff partnership seeks to recover damages claimed to have been sustained by it as a result of the alleged violation by defendants of § 1 of the Sherman Act.[1] Plaintiff alleges that it is engaged in the business of distributing confections to retailers for resale and that the defendant Curtiss Candy Company is engaged in the manufacture and distribution of confections and that the transactions between plaintiff and said candy company were in interstate commerce; that the defendants Lowe, Fields and Wood are Independent dealers who distribute the products of said candy company to retail dealers in competition with plaintiff and that defendant candy company, through its agent, defendant Wiggins, and the defendants Lowe, Fields and Wood entered into a conspiracy and combination to maintain and fix prices on said confections and to lessen competition in interstate commerce through allocation of territories, such conspiracy consisting of an agreement between them to accomplish such ends by securing the termination of plaintiff as a jobber of the confections manufactured by such candy company and that as a result thereof the public generally has been injured and plaintiff has been damaged. The defendants deny the material allegations of the amended petition.

The parties to this cause have stipulated the evidence consisting of summaries of the depositions of a number of witnesses, a stipulation of facts and a stipulation of documents and have agreed that the Court may make findings of fact and conclusions of law from the evidence contained therein and enter its judgment in accordance therewith as to the question of liability.

From such evidence, the Court makes the following:

### Findings of Fact.

Plaintiff herein is engaged in the sale of confections to retailers in 17 Georgia counties, selling to approximately 750 retail dealers.

Plaintiff purchased from Curtiss Candy Company certain items of the products manufactured by it continuously from prior to 1942 up to about March, 1955, except for the period during World War II when the candy company discontinued shipping to all jobbers because of war shortages.

Prior to 1938 the principal method of distribution of its products by Curtiss Candy Company was through chain stores and jobbers throughout the country, but about that time it began experimenting with a system of distribution through route-salesmen who are now denominated by it as "Curtiss Food Service Distributors". Shortly after the end of World War II, Curtiss, having found the route-salesmen system to be a more successful method of distribution, developed such system throughout the country, covering all states east of the Rocky Mountains except three New England States.

In 1950 the management of the defendant candy company decided that there was some outlets which were not being adequately covered by the route-salesmen system of distribution and it was determined to selectively take on jobbers who would give emphasis to its products and add to the better distribution thereof. As a result of this decision quite a number of jobbers were placed on the "direct" selling list among

---

1. 15 U.S.C.A. § 1.

which was the plaintiff, Herren Candy Company.

Plaintiff was one of a number of jobbers who distributed the products sold by it through "wagon distribution" and shortly after Curtiss resumed selling to jobbers it became apparent to it that there was a conflict in the distribution of its products between its route-salesmen and those jobbers who sold by wagon distribution, by reason of the fact that these jobbers were using its product, Baby Ruth and other leaders, to give support to their own or other allied lines in competition with the full Curtiss line, the Curtiss route-salesmen carrying the Curtiss products exclusively, whereas the other wagon distributors carry a great number of products in lines competing with Curtiss products. The Curtiss route-salesmen found that customers assigned to them were getting such leaders through other distributors, such as plaintiff, foreclosing them from sales to such customers, not only on these products but of the full Curtiss line. Because of this, the route-salesmen made complaints to Curtiss. This was not a localized condition but was one found to exist in other sections of the country.

After resumption of sales to jobbers a substantial turnover in the employment of route-salesmen developed in the Atlanta District and because of this turnover and the dissatisfaction among the route-salesmen, it was determined by the management of Curtiss Candy Company that this duplication of effort should be eliminated, and following a policy of selective determination of which jobber accounts should be retained, and which should be terminated, many wagon jobbers were terminated. This termination was not wholesale, but was accompanied by a thorough examination of each jobber account as to his contribution to the overall distribution of the products of Curtiss Candy Company. Plaintiff was not the only jobber whose account was terminated. All wagon jobbers in the Atlanta vicinity were terminated, as well as in several other cities in the Southeast, and Curtiss retained in Atlanta only four jobbers who take orders and deliver later.

The evidence shows that the normal procedure for the removal of jobbers which had been previously set up by Curtiss Candy Company was followed with reference to the plaintiff here. Under this procedure a standard printed form is used in connection with adding, cutting off or reinstating jobbers. It is required that two of these forms be filled out, one of which clears through the district manager and the other through the regional direct sales manager, and both forms, after such clearance, are forwarded to Chicago, Illinois to Mr. Phillip Schnering, who is vice-president in charge of sales for the entire domestic and foreign market for Curtiss Candy Company, and any discontinuance or adjustment of a district account must have his final approval. The procedure followed with reference to Herren Candy Company was as follows:

The conflict in the method of distribution of Curtiss products in the Atlanta territory was brought to the attention of Mr. Raymond C. Wiggins who was district sales manager for Curtiss Candy Company through complaints to him by the route-salesmen, and early in March, 1955, after having discussed the matter with Mr. J. H. McInteer, division sales manager, Mr. Wiggins went to the place of business of plaintiff for the purpose of advising, and did advise, Mrs. Herren that there was a duplication of service and a conflict in the method of distribution of the products of Curtiss Candy Company and that they would have to withdraw the account of Herren Candy Company. Mr. Wiggins thus initiated the decision to withdraw the account of plaintiff as a jobber and initiated the request for termination of the account by requesting that Mr. George Mobley, the special accounts salesman who called on Mrs. Herren, fill out the forms. Mr. Mobley did so and recommended thereon that Herren Candy Company be reinstated. One copy of the form was then sent to Mr. Wiggins, the district sales manager, and the other to Mr. Ed Turner,

regional direct sales manager. Mr. Turner also recommended on the copy of the form sent to him that plaintiff be reinstated and retained and gave as his reason the extra volume Curtiss was receiving from plaintiff at that time. After Mr. Wiggins and Mr. Turner had entered their recommendations on the forms, they were forwarded to Mr. Phillip Schnering, the vice-president of Curtiss Candy Company at Chicago, Illinois. Mr. Schnering took them along with him to a company meeting at Asheville, North Carolina and the matter was discussed there, and after such discussion, Mr. Schnering concluded that plaintiff's account was not needed and that Curtiss Candy Company would benefit by terminating the account. The senior regional manager of Division Four and Division Eight, Mr. Perry N. Kasson, who was also present at the Asheville meeting, and with whom the matter was discussed, also agreed that it would be to the best interest of the company that Herren Candy Company should remain cut off as a jobber.

The purpose of Curtiss in terminating plaintiff as a jobber was in furtherance of a policy which it deemed necessary in order to promote and increase the sale of Curtiss products.

The salesmen defendants here involved are employed by the defendant Curtiss Candy Company under contracts which can be terminated at will by either party. Under these contracts they are required to devote their full time to the sales of Curtiss products and are prohibited from dealing in other products, and agree upon termination of the contract not to engage in a business competitive to Curtiss for a period of two years in the territory in which they worked while so employed. The contract provides that such "Curtiss Food Service Distributors" shall operate exclusively in the territory assigned to them and that any customer lists developed by them shall be the property of Curtiss.

The contract provides that Curtiss will sell to such food distributors their requirements of its products and that title to such merchandise passes to the distributors at the time of delivery, and that the merchandise bought is to be paid for at the end of the week in which purchased, Curtiss to pay such distributors a commission of 15% on all money remitted to it. Under the contract Curtiss furnishes to its food distributors a truck for their use in selling and delivering such merchandise and pays all expenses incident to the operation of such truck except for gas. It is required that such truck have Curtiss advertising thereon and the distributors are required to place with customers not less than 25 pieces of Curtiss advertising per week as instructed by it. It is required that each distributor execute a bond to indemnify Curtiss, and Equipment Finance Company, the owner of the trucks, against damage to the truck on account of the distributors' negligent operation thereof.

After employment each such distributor is given at least a week's training by a supervisor. No definite hours of work are required of them, but the territories assigned and the customer lists are so set up as to require five or five and one-half days per week to fully cover such territory and each salesman is expected to call upon all of the customers in his territory at least once a week. While it is suggested that he sell at the prices charged him, he may, and such distributors sometimes do, sell for less in order to get a large order, but when he does so, the discount he gives to such customers necessarily comes out of his 15% commission.

Sales meetings for such distributors in the Atlanta territory are held once a month by Mr. Wiggins, and if a distributor fails to attend a meeting, he attempts to find out the reason therefor.

Each distributor is required to make weekly reports to the company showing his calls and sales for each day and the totals for the week and they are also required to make a monthly inventory report to the supervisor which is subject to audit by such supervisor periodically. They are required to put out

Curtiss advertising in retail stores and to hold special promotions at stores in their territory. Income taxes are withheld from their commissions by Curtiss and they participate in the company's group insurance plans and are covered by workmen's compensation, and all but one of the distributors here involved participate in the company's profit sharing plan.

Curtiss Candy Company has no monopoly in the candy market in the Atlanta area and gets only 11% of the local candy dollar. It sells about 90% of its merchandise through its route-salesmen or Food Service Distributors as compared to jobbers, and the average route-salesman sells about six times the annual sales volume which plaintiff produced for Curtiss Candy Company.

From a careful consideration of the evidence in this case, the Court finds that it fails to show, by a preponderance thereof, that there was any conspiracy or agreement between any of the defendants to fix or maintain prices or to allocate markets for the sale of its products in violation of § 1 of the Sherman Act, as alleged in the complaint.

### Conclusions of Law.

This being an action against defendants to recover damages allegedly sustained by plaintiff as a result of alleged violation of § 1 of the Sherman Act (15 U.S.C.A. § 1) by defendants, this Court, by virtue of the provisions of Title 15 U.S.C.A. § 15, has jurisdiction of the case.

Neither the fixing of the policy which led to the termination of plaintiff as a jobber nor the termination itself was under the evidence in this record a violation of the anti-trust laws. See Hudson Sales Corp. v. Waldrip, 5 Cir., 211 F.2d 268, 272.

A corporation has the right as a single manufacturer to select its customers and to refuse to sell its goods to any one, for any reason, and does not violate § 1 of the Sherman Act prohibiting conspiracy when it exercises that right through its own officers and agents.

The individual defendants were the agents of the corporate defendant and the corporation could not conspire with itself. See Nelson Radio & Supply Co. v. Motorola, 5 Cir., 200 F.2d 911.

No conspiracy to violate the anti-trust laws has been shown and no violation of such laws has been established.

The plaintiff can not recover.

A judgment in conformity with the findings and conclusions here reached may be prepared and presented.