CENTRAL ICE CREAM COMPANY, an Illinois corporation, Plaintiff,

v.

GOLDEN ROD ICE CREAM COMPANY, an Illinois corporation, Defendant.

No. 56 C 1010.

United States District Court
N. D. Illinois, E. D.
July 22, 1957.

William C. Wines, Chicago Ill., for plaintiff.

Philip A. Rose, Chicago, Ill., for defendant.

CAMPBELL, District Judge.

Plaintiff, Central Ice Cream Company, an Illinois Corporation, brings this suit against Golden Rod Ice Cream Company, an Illinois Corporation, alleging conduct by defendant company damaging plaintiff's business in violation of the Sherman Anti-Trust Act (15 U.S.C.A. § 1), the Clayton Act (15 U.S.C.A. § 13), the Robinson-Patman Act (15 U.S.C.A. §§

**686**

13a and 13b), the Civil Rights Act (42 U.S.C.A. § 1985(3)) and the National School Lunch Act (42 U.S.C.A. § 1753). The complaint prays for temporary and permanent injunctions and for damages. Defendant has filed its motion to dismiss the complaint for lack of jurisdiction over the subject matter and for failure to state a claim.

The complaint alleges that plaintiff is an ice cream manufacturer in Illinois; that it "imports a very substantial part of its milk, cream and other ingredients from Wisconsin and other states in interstate commerce, transforms them into ice cream in Illinois and sells this ice cream very extensively both in Illinois and in other states"; that defendant is engaged in manufacture of ice cream also and obtains the raw materials from other states but that "so far as the plaintiff is informed the defendant makes no sales or deliveries of its ice cream outside Illinois". The gravamen of the complaint is that sometime in November, 1955, plaintiff and defendant submitted rival bids to the Board of Education of the City of Chicago, for the supply of ice cream for use in the Board's school lunch program, which is subsidized by the Federal Government under the National School Lunch Act; that defendant warned plaintiff that if it should persist in its bid to secure a contract with the Board, defendant would make a concentrated effort to deprive plaintiff of its customers. The complaint further alleges that the contract was awarded to plaintiff and that thereupon defendant launched a campaign to solicit away most of plaintiff's customers "in the Chicago area", offering loans, air conditioning units, deep freeze units and others items of personal property on condition that plaintiff's customers desert plaintiff and patronize defendant.

In support of its motion to dismiss defendant argues (1) that in order that plaintiff show a right to relief under the Sherman Anti-Trust Act it must show a combination or conspiracy between two or more persons and that where defendant is a single company it is not enough to allege a combination or conspiracy among the employees of such company; (2) that in order that plaintiff show a right to relief under the Clayton and Robinson-Patman Acts it must show that defendant committed the acts complained of "in commerce, in the course of such commerce"; (3) that section 1985(3) of the Civil Rights Act is inapplicable to the facts alleged; and (4) that the National School Lunch Act contains no provisions which would ground a right of action for civil relief.

■ There is merit in all these contentions. Plaintiff, in its brief, apparently abandons its reliance purely upon the Sherman Anti-Trust Act. It attempts to meet defendant's second contention by reference to this court's decision in Bowman Dairy Co. v. Hedlin Dairy Co., 126 F.Supp. 749. In that case, this court, relying upon the decision of the Supreme Court in Moore v. Mead's Fine Bread Co., 348 U.S. 115, 75 S.Ct. 148, 151, 99 L.Ed. 145, held that where plaintiff is engaged "in commerce" but defendant is not, plaintiff should not fail on that account under the Clayton and Robinson-Patman Acts, it having been held in the Moore case, involving the converse situation (where defendant acts "in commerce in the course of such commerce" to injure plaintiff who is not engaged "in commerce"), that plaintiff is entitled to relief. This court was led to its conclusion in the Bowman case, by consideration of the injustice which would result from holding that the remedies of plaintiff and defendant so situated are not mutual, and of the words of Congressman Utterback, manager of the Robinson-Patman Act in the House, quoted in the opinion of the Moore case, that one of the purposes of the Act was "to protect interstate commerce itself from injury by influences within the State". It may be that where such influence upon the interstate commerce of plaintiff company is alleged, a right of action against a defendant engaged purely in intrastate commerce may be sufficiently stated under the Clayton and Robinson-Patman Acts. This is doubtful in view of the

unambiguous language used in both the acts that "it shall be unlawful for any person engaged in commerce, in the course of such commerce, to", etc. However, in this case there is no allegation whatever that plaintiff's interstate business has suffered through defendant's conduct.

■ Plaintiff advances the eleventh hour argument that defendant is in fact engaged in interstate commerce in that its purchase of raw materials in other states and its manufacture and sale of ice cream in Illinois, constitute an uninterrupted flow of commerce. There are many authorities to the effect that when the raw materials from other states come to rest in defendant's manufacturing plant to await processing, the flow of commerce is interrupted (cf. Ewing-Von Allmen Dairy Co. v. C. and C. Ice Cream Co., 6 Cir., 109 F.2d 898, certiorari denied 312 U.S. 689, 61 S.Ct. 618, 85 L.Ed. 1126). Defendant points to United States v. Employing Plasterers Ass'n, 347 U.S. 186, 74 S.Ct. 452, 98 L.Ed. 618, as announcing a different rule. In that case the Supreme Court held that a complaint under the Sherman Anti-Trust Act, alleging a combination by a Chicago trade association of plastering contractors, a local union of plasterers and the union's president, to restrict and control purchase of plastering materials shipped in from other states, could not be properly dismissed on the basis that those materials come to rest before the local restraints become effective. The question whether local restraints upon purchase of materials shipped from other states, not subjected to manufacturing processes on arrival, are restraints upon commerce is not the same as the question whether sale within a state of finished products manufactured within that state from materials shipped from other states, is in commerce or out of commerce. The fact that the materials come to rest upon arrival in the state may indeed be irrelevant to the first question, it is clearly relevant and controlling in the second.

■ Plaintiff however relies upon its allegation that defendant makes sub-stantial sales to a restaurant chain in Illinois which in turn supplies railroads in interstate commerce. Such sales may place defendant in commerce, if the question were one of federal power to regulate its business (Santa Cruz Fruit Packing Co. v. National Labor Relations Board, 303 U.S. 453, 58 S.Ct. 656, 82 L. Ed. 954; Hamlet Ice Co. v. Fleming, 4 Cir., 127 F.2d 165). But the Clayton and Robinson-Patman Acts require, for their violation, that the offending person not only "engaged in commerce" but do the prohibited acts "in the course of such commerce". There is no allegation in plaintiff's complaint that defendant's sales to the restaurant chain supplying railroads involved any acts violative of the Clayton and Robinson-Patman Acts. On the contrary the allegation of plaintiff's complaint is that defendant launched a campaign to solicit away most of plaintiff's customers "in the Chicago area".

■ Plaintiff cannot be sustained in its reliance upon section 1985(3) of the Civil Rights Act. The history of that section shows that it was not meant to deal with the questions here presented. As section 2 of the Act of April 20, 1871, the full title of which was "An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other Purposes", it was intended as a solution to pressing problems of civil liberties following upon the Civil War. Apart from its historical context, it has been authoritatively interpreted, in the light of section 1 of the original act (now 42 U.S.C.A. § 1983), as applicable only to combinations or conspiracies "under color of state law" (Collins v. Hardman, 341 U.S. 651, 71 S.Ct. 937, 939, 95 L.Ed. 1253). It is not alleged here that defendant's acts, in depriving plaintiff of its customers, were done under color of state law.

Plaintiff does not argue with respect to the National School Lunch Act that it has a cause of action arising under that Act, rather it argues that the existence of the Act strengthens its case under the Clayton and Robinson-Patman

Acts. Since I hold that plaintiff has failed to state a claim upon which relief may be granted under those Acts, plaintiff's argument here need not be considered.

Defendant's motion to dismiss the complaint is hereby granted. Accordingly the complaint is dismissed.