GOLDLAWR, Incorporated, Plaintiff,

v.

Jacob J. SHUBERT and Lawrence Shubert Lawrence, Milton Shubert, William Klein and Sylvia W. Golde, individually and as Trustees of the Estate of Lee Shubert, Deceased, Marcus Heiman, United Booking Office, Incorporated, Select Theatres Corporation, Select Operating Corporation and L.A.B. Amusement Corporation, Defendants.

GOLDLAWR, Incorporated, Plaintiff,

v.

Jacob J. SHUBERT and Lawrence Shubert Lawrence, Milton Shubert, William Klein and Sylvia W. Golde, individually and as Trustees of the Estate of Lee Shubert, Deceased, individually and as co-partners, John Shubert, Marcus Heiman, United Booking Office, Incorporated, Select Theatres Corporation, Select Operating Corporation, Modern Theatre Corporation, Barrymore Theatre Corporation and L.A.B. Amusement Corporation, Defendants.

Civ. A. Nos. 21506, 22092.

United States District Court
E. D. Pennsylvania.

Dec. 22, 1958.

Harold E. Kohn, Philadelphia, Pa., for plaintiff.

Montgomery McCracken, Walker & Rhoads, by C. Russell Phillips, Philadelphia, Pa., for defendants.

KRAFT, District Judge.

Plaintiff commenced these two actions against substantially the same defendants under relevant provisions of the antitrust laws. The first action (21506) was commenced on October 17, 1956 and the second (22092) on February 18, 1957. The actions are essentially identical except that the second (a) added certain defendants, (b) sued several original defendants in additional capacities and (c) extended the period for which damages are sought. Now pending are numerous pre-trial motions which will be disposed of seriatim.

### I. Motions To Dismiss For Improper Venue

These motions were filed by all defendants in both actions except Barrymore Theatre Corporation (Barrymore) and Modern Theatre Corporation (Modern).[1] Disposition of these motions requires some analysis of the facts germane to two classes of defendants, i. e., individuals and corporations.

#### (a) Individual Defendants

After granting a cause of action under the antitrust laws to anyone injured in his business or property, 15 U.S.C.A. § 15 lays the venue in such actions in " * * * any district court of the United States in the district in which the defendant resides or is found or has an agent, * * * " We reject defendants' contention that 28 U.S.C.A. § 1391(b), a general venue statute, applies. By its express terms § 1391(b) does not apply where a different law provides otherwise.[2]

---

1. Modern and Barrymore are not defendants in 21506. Both filed answers in 22092.

2. See Fourco Glass Co. v. Transmirra Products Corp., 1957, 353 U.S. 222, 228, 77 S.Ct. 787, 1 L.Ed.2d 786; Anderson-

Friberg, Inc., v. Justin R. Clary & Son, Inc., D.C.S.D.N.Y.1951, 98 F.Supp. 75, 83; Lipp v. National Screen Service Corp., D.C.E.D.Pa.1950, 95 F.Supp. 66, 70.

Lawrence Shubert Lawrence (Lawrence) resided in this district and was properly sued here.

Plaintiff does not contest the averments in the remaining individual defendants' affidavits that each resided in New York and, since none of them was *found* here, we must determine whether any of them had *an agent* here.

■ Prior to 1914, venue in antitrust actions was laid in the district in which the defendant resided or was found.[3] The addition of the district in which defendant "has an agent" was a change made by the Clayton Act, which also enlarged prior venue provisions as to corporations by adding thereto the district in which a corporation transacts business.[4] In Eastman Kodak Co. of New York v. Southern Photo Materials Co., 1927, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684, the court construed the latter addition as one intended to broaden the concept of "found" in the earlier venue provisions. A corporation could thus be held to be transacting business, and venue established, "—although not present by agents carrying on business of such character and in such manner that it is 'found' therein and is amenable to local process—if in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character."[5] To meet the test of "found" in the earlier venue provisions, People's Tobacco Co., Ltd., v. American Tobacco Co., 1918, 246 U.S. 79, 84, 86, 38 S.Ct. 233, 62 L.Ed. 587 required the presence of agents carrying on business as described above.

We believe "or has an agent" broadened the concept of "found" in the case of individual defendants, just as "transacts business" broadened the concept of "found" in the case of corporate defendants, although Eastman did not decide this question. The purpose of these two changes was to " * * * give the plaintiff the right to bring suit and have it tried in the district where the defendant had committed violations of the Act and inflicted the forbidden injuries."[6] The difference in the choice of words applicable to individual and corporate defendants was intended to avoid too broad a change which might have jeopardized passage of the entire bill.[7]

"Thus *strict* uniformity in the two sections' venue provisions was not achieved. But whatever their differences may be, *each addition was designed to aid plaintiffs by giving them a wider choice of venues, and thereby to secure a more effective, because more convenient,* enforcement of antitrust prohibitions."[8] (Emphasis supplied).

■ From the affidavits filed by the parties it appears that both J. J. Shubert and John Shubert had the unquestioned right and power to control Lawrence and that each repeatedly exercised such right and power in directing Lawrence's business activities in this district. The extent of J. J. Shubert's exercise of control over Lawrence is somewhat surprising, in view of the latter's high position in the Shubert enterprises. J. J. Shubert ratified the orders of Lawrence for repairs to local theatres, authorized his vacations, negotiated contracts with local unions, arranged schedules for the lengths of runs in local theatres, and, in some instances, even personally inspected local theatres.[9] John Shubert, a defendant in 22092, exercised a like degree of control over Lawrence in the opera-

3. Act of July 2, 1890, c. 647.

4. 15 U.S.C.A. § 22.

5. 273 U.S. at page 373, 47 S.Ct. at page 403. See also, United States v. Scophony Corporation of America, 1948, 333 U.S. 795, 807, 68 S.Ct. 855, 92 L.Ed. 1091, which reaffirmed this construction.

6. United States v. National City Lines, Inc., 1948, 334 U.S. 573, 583, 68 S.Ct. 1169, 1175, 92 L.Ed. 1584.

7. Id., 334 U.S. at page 585, 68 S.Ct. at page 1176.

8. Id., 334 U.S. at page 586, 68 S.Ct. at page 1176.

9. See exhibits 155 to 180 accompanying plaintiff's affidavit.

tion of local theatres. He instructed Lawrence on the changes to be made in contracts, on the changes of performances from one Philadelphia theatre to another, on the orders for tickets for performances, on increases and decreases in ticket prices, on price scales, advertising, and on other matters. It is difficult to conceive of a more scrupulous control than that exercised both by J. J. and by John Shubert over Lawrence in the business conduct of the local theatres. We find, therefore, that, as the term is defined at common law and under the more liberal intendment of antitrust cases, Lawrence was the agent of both Shuberts within the meaning of 15 U.S C.A. § 15.[10] See Riss & Company, Inc., v. Association of Western Railways, D.C. D.C.1958, 159 F.Supp. 288, 293.

The evidence does not persuade us, however, that any other of the moving individual defendants had an agent within this district.

Accordingly, the motions of Lawrence and J. J. Shubert in 21506 and 22092 and of John Shubert in 22092 will be denied. The motions of Milton Shubert, William Klein, Sylvia W. Golde and Marcus Heiman, individually, in each action, will be granted.

### (b) Corporate Defendants

■ United Booking Office, Inc. (U. B. O.), Select Theatres Corporation (Select Theatre), Select Operating Corporation (Select Operating), and L. A. B. Amusement Corporation (L. A. B.) are defendants in both actions. Barrymore Theatre Corporation (Barrymore) and Modern Theatre Corporation (Modern) are defendants only in 22092. There are no motions before us by Barrymore or Modern or by L. A. B. which appears to have been dissolved on June 19, 1952. We have for consideration the motions of U. B. O., Select Theatre and Select Operating.

- From the affidavits and accompanying exhibits filed by the parties it is evident that the material facts affecting the internal organization, the inter-corporate functions and dealings of the corporations are not matters of substantial dispute. It is upon the legal significance of those facts that disagreement exists. The complicated nature of the arrangements among these corporations necessitates a somewhat detailed discussion of the relevant facts.

Select Theatre was the parent corporation. All of its preferred and 90% of its common stock was owned by various members of the Shubert family. Select Theatre was the owner of all of the stock of Select Operating, Barrymore and Modern and was the owner of 50% of the stock of U. B. O., the other 50% of which was owned by Marcus Heiman, President of U. B. O.

The two wholly-owned local subsidiaries, Barrymore and Modern, ostensibly operated the Philadelphia theatres and were the only corporate defendants licensed to do business in Pennsylvania. Purportedly, Barrymore operated the Forrest Theatre and Modern the Walnut, Locust and Shubert Theatres. All the corporate defendants, except Modern, a Pennsylvania corporation, were incorporated in New York and had their offices there in the same building. U. B. O., Select Theatre and Select Operating were not licensed to do business in Pennsylvania and had no address, telephone listing or officers resident in that state.

Corporate separateness in accounting procedures was observed in the actual day to day operation of these enterprises. The treasurer of each Philadelphia theatre collected the receipts, deducted the local amusement tax and remitted the amount of the tax to Select Operating, which kept the books of all the corporations. Select Operating deposited the tax remittance in a special

---

10. It may be noted, parenthetically, that the fact that J. J. and John Shubert may have been acting in their respective capacities as corporate officers does not mean that, for venue purposes, they had no agents here as individuals. See, United States ex rel. Marcus v. Hess, D.C.W.D.Pa.1941, 41 F.Supp. 197, 211. See also, 15 U.S.C.A. § 24.

account in New York to the sender's credit and issued its own check to the taxing authority for the respective account of Barrymore or Modern. The tax returns for the local corporations were prepared by Select Operating and forwarded with the remittances.

Each week the manager of each local theatre deposited the balance of the weekly receipts in a Philadelphia bank and issued a check to Select Operating for that amount. Customary payroll deductions, etc., were computed in Philadelphia and a check for such deductions was likewise issued to Select Operating. These were accumulated in New York and appropriate returns were prepared and payments made by Select Operating for Modern and Barrymore.

Defendant Lawrence was the general manager of the Philadelphia theatres and was ostensibly employed by Barrymore and Modern. Each of these corporations sent its proportionate share of Lawrence's salary to Select Operating in New York and the latter issued its own check in payment of his salary. Both Barrymore and Modern contributed to the operational cost of Select Operating and also paid it a "home office fee" for "executive and management services".

Shows were booked in New York through the services of Select Operating or U. B. O. This entailed agreements for the use by producers of designated theatres on specific dates. The terms of each booking agreement were embodied in a written contract signed by the producer and either Barrymore or Modern as the case might be. Either J. J. Shubert or John Shubert executed the contract as an officer of Barrymore or Modern.

Select Operating also executed blanket contracts for concessions in all four Philadelphia theatres and the amounts received therefrom were apportioned on its books between the corporate operators of the local theatres.

The foregoing facts which appear in defendants' affidavits indicate clearly that in accounting procedures, at least, corporate separateness was carefully observed. In the exhibits accompanying plaintiff's affidavit, however, are strong indications that, in other respects, corporate separateness was not so meticulously adhered to.

Excerpts from the minute books of Select Theatre show that the corporate existence of Barrymore and Modern was largely discretionary with the parent. Correspondence between Select Theatre and Philadelphia, signed by J. J. Shubert and others on Select Theatre stationery, evidences a close control by Select Theatre of the minutiae of day to day operating procedures. The insurer of the local theatres addressed all correspondence to Select Theatre. Documents relating to the opening of a local bank account by a subsidiary were sent to Philadelphia by Select Theatre. Office materials such as stationery, ticket envelopes, etc., for Barrymore and Modern were supplied by Select Theatre. The advertising of the four local theatres was consolidated. Each theatre used its facilities to advertise plays presented at the others.

Select Theatre sent to Philadelphia "termination of contract notices" to be signed by local employees. J. J. Shubert for Select Theatre was kept carefully advised of the status of contracts with musicians in Philadelphia and other cities. Select Theatre instructed local managers about obtaining discounts for advertising in Philadelphia papers, about excessive expenditures for telephone calls and requested weekly reports on the operation of the local theatres.

Although bookkeeping seems to have been the major function of Select Operating, it was also the center from which supplies were sent to the Philadelphia theatres. Employment records and copies of contracts for shows were also kept by Select Operating.

U. B. O. booked shows for the Philadelphia theatres and determined the booking dates. It negotiated the terms of the contracts with the producers. Inquiries by private parties about the use

of the Philadelphia theatres were referred to U. B. O.

In the case of corporations the test for venue under the antitrust law is, as we have said, whether the corporation is an inhabitant of, is found in or transacts business in the district in which suit is brought.

None of the three moving corporate defendants was an inhabitant of this district. The tests which determine whether a corporation is "found" within the district are narrower in scope than those which determine whether it "transacts business" therein. We shall, therefore, determine whether any of the moving corporate defendants transacted business in this district.[11]

We decline to adopt the plaintiff's theory that the allegation of conspiracy in the complaint constitutes Barrymore or Modern or both, as alleged co-conspirators, the agent or agents of the movant corporate defendants for venue purposes under the Clayton Act in any district where Barrymore or Modern is amenable to suit. Several cases have so held,[12] in purported reliance on Giusti v. Pyrotechnic Industries, Inc., 9 Cir., 1946, 156 F.2d 351, but we incline to the reasoning in two recent cases which conclude that it is doubtful that Giusti so held or that this is the law in any circuit.[13]

It is next urged that venue can be laid in this district on the ground that Select Theatre, Select Operating and U. B. O. were themselves transacting business here or were doing so through the agency of Barrymore and/or Modern, the wholly-owned subsidiaries of Select Theatre. The evidence fails to persuade us that these corporations were themselves doing business here. We consider, then, whether the transaction of business here by Barrymore and Modern is sufficient, under the circumstances, to warrant holding that their parent, Select Theatre, did so.

We are mindful that the Supreme Court has held that, as long as corporate separateness is strictly maintained, service of process on a wholly-owned subsidiary does not subject the parent corporation to the court's jurisdiction, even though the purpose of incorporating the subsidiary was to avoid subjection of the parent to such jurisdiction. Cannon Manufacturing Co. v. Cudahy Packing Co., 1925, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634. We are also aware that in several antitrust cases the standard of Cannon has been adopted in determining questions of venue. However, Cannon itself deemed the rule inapplicable where *an affirmative ground is shown for treating the subsidiary as an agent of the parent,* and antitrust cases have recognized the limitation.[14]

In the present case an affirmative ground has been shown, we think, for treating Barrymore and Modern as local agents of their parent, Select Theatre, for the same reasons which impel us to hold Lawrence, individually, to be an agent of J. J. and John Shubert. The Shuberts, in their right and power to control Lawrence, as well as in their exercise of that right and power, were acting both as corporate officers and as individuals and, on many occasions, in

11. Eastman Kodak Co. of New York v. Southern Photo Materials Co., 1927, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684.

12. Riss & Company, Inc., v. Association of Western Railways, D.C.D.C.1958, 159 F.Supp. 288, 295, 296; De Golia v. Twentieth Century-Fox Film Corp., D.C. N.D.Cal.1953, 140 F.Supp. 316; Ross-Bart Port Theatre, Inc., v. Eagle Lion Films, Inc., D.C.E.D.Va.1954, 140 F. Supp. 401; Don George, Inc., v. Paramount Pictures, Inc., D.C.W.D.La.1951, 111 F.Supp. 458.

13. Bertha Building Corp. v. National Theatres Corp., 2 Cir., 1957, 248 F.2d 833, 836; Independent Productions Corp. v. Loew's, Inc., D.C.S.D.N.Y.1957, 148 F. Supp. 460. See also, Hansen Packing Co. v. Armour & Co., D.C.S.D.N.Y.1936, 16 F.Supp. 784.

14. United States v. Watchmakers of Switzerland Information Center, Inc., D.C.S.D.N.Y.1955, 133 F.Supp. 40, 45.

such fashion as to make inseparable the capacity in which, respectively, they acted. Thus, as officers of the parent corporation, they had the right and power to and did control the acts of Lawrence, as an executive employee of the two local subsidiaries.

In Waldron v. British Petroleum Co., Ltd., D.C.S.D.N.Y.1957, 149 F.Supp. 830, a case remarkably similar to this, the court held a foreign parent to be transacting business in the forum by reason of the activities of its wholly-owned subsidiaries there. In that case a foreign corporation maintained two wholly-owned subsidiaries in the Southern District of New York, at least one of which attempted to preserve technical separateness from its parent. The court noting the active interrelation between parent and subsidiary in other respects, held as we have indicated. Certain language in the court's opinion in that case appears particularly apropos here and we quote it *in extenso:*

> "A person would have to be blind to the economic facts of business life if he did not recognize that the activities of [the subsidiaries] in this District are activities which in another less elaborate corporate set-up would be conducted directly by branch offices or agents within the District. It is Socal, and not the subsidiaries, which is the defendant in the present action. What is Socal? It is a large aggregation of invested capital which transacts its business through officers, agents, employees, and through subsidiaries, which in the drilling, production and marketing of oil operate as agents, employees or branch offices would operate. *Does the fact that this large business entity, for tax reasons or otherwise, decides to fragmentize its operations into numerous corporate subsidiaries, make the resulting operations of the subsidiaries any the less a part of transaction of business by*

*Socal?"* 149 F.Supp. at page 834. (Emphasis supplied).

\* \* \* \* \* \*

> "A corporation may be a fiction of the law but there is no reason to carry the fiction to the extreme of saying that a corporation which has wholly owned subsidiaries performing services in the local jurisdiction which ordinarily would be performed by service employees, or making sales which ordinarily would be made by a sales department, is in fact not transacting business in that jurisdiction, *particularly when the entire corporate set-up of the defendant shows that it is designed to operate to a substantial degree through separate corporate entities responding to the wishes and directions of the parent and providing the revenues sought by the parent. We would be exalting fiction over fact if we were to conclude that under those circumstances the parent company was not in fact transacting business in this District through the instrumentality of its wholly owned subsidiaries."* 149 F.Supp. at page 835. (Emphasis supplied).

The applicability of this language to the facts before us is clear. Lawrence, through Barrymore and Modern, conducted the actual operations, but only subject to the controlling directions of Select Theatre, acting through the Shuberts. Cf. United States v. Watchmakers of Switzerland Information Center, Inc., D.C.S.D.N.Y.1955, 134 F.Supp. 710, 712.

We consider, next, whether the transaction of business here by Barrymore and Modern is sufficient, under the circumstances, to warrant holding that Select Operating or U. B. O. did so.

Select Operating owned no stock of Barrymore or Modern. All of Select Operating's stock was owned by Select Theatre. Select Operating cannot be held to have transacted business here by

reason of the activities of its wholly-owned subsidiaries because Barrymore and Modern were wholly-owned subsidiaries of Select Theatre, not of Select Operating.

The evidence persuades us that the principal function of Select Operating was to provide a central bookkeeping system and service department for the enterprises which Select Theatre owned or controlled, among them Barrymore and Modern. Select Theatre was the principal and Select Operating its agent. Neither Barrymore nor Modern was agent for Select Operating; to the contrary, Select Operating was, for certain purposes, their agent under the control and direction of their common principal, Select Theatre. The business transacted here by Barrymore and Modern was under the control and direction and for the benefit of Select Theatre, not Select Operating.

■ U. B. O. owned no stock of Barrymore or Modern. Half of U. B. O.'s stock was owned by Select Theatre and half by Marcus Heiman. U. B. O. cannot be held to have transacted business here by reason of the activities of its wholly-owned subsidiaries because Barrymore and Modern were wholly-owned subsidiaries of Select Theatre, not of U. B. O.

The evidence persuades us that the principal function of U. B. O. was to serve as an intermediary and clearing house between theatrical producers and theatre owners including, but not limited to, Select Theatre and its subsidiaries. Select Theatre was one of the principals for which U. B. O. functioned as broker or agent. Neither Barrymore nor Modern was agent for U. B. O.; to the contrary, U. B. O. was, for booking purposes, their broker or agent under the control and direction of Select Theatre. The business which Barrymore and Modern transacted here was under the control and direction and for the benefit of Select Theatre, not U. B. O. The latter's apparent power to fix price scales for Barrymore and Modern was a power in fact exercised by Select Theatre through John Shubert, though on U. B. O. stationery, and was not a power possessed by U. B. O.

Defendants place great reliance upon Pfeiffer v. United Booking Office, Inc., D.C.N.D.Ill.1950, 93 F.Supp. 363 in which the court granted a motion to dismiss made by the same three defendants upon the same grounds which they here advance. However, we think that Pfeiffer is, in part, distinguishable from the present case principally because the interrelations between parent and subsidiaries are more fully revealed here than there.

As to Select Theatre, which owned all the stock of the local Chicago corporation, that court found that the separation between parent and subsidiary was "real". The conclusion was that correspondence between named employees of Select Theatre and the Chicago manager did not show that Select Theatre had any authority over the local manager. As indicated by what we have said heretofore, such a conclusion could not be fairly drawn here from the correspondence between J. J. Shubert and Lawrence.

It is of interest to note that in Waldron, supra, there was a like claim by the parent that *two* prior cases against the same defendants had been decided favorably to the parent corporation upon its motions to dismiss for lack of venue. The court, in Waldron, pointed out that the Scophony ruling was made after the decisions in those cases and stated: "It is doubtful if a court today, guided as it must be by these later opinions of the United States Supreme Court, could reach the same conclusion as Judge Bright did in the Universal Oil Products case." 149 F.Supp. at pages 835, 836. The latter case, referred to by the court in Waldron, was Winkler-Koch Engineering Co. v. Universal Oil Products Co., D.C.S.D.N.Y.1946, 70 F.Supp. 77, which was the only case relied on by Pfeiffer.

The motion of Select Theatre will, therefore, be denied and the motions of

Select Operating and U. B. O. will be granted.

## II. Motions To Quash Service and Dismiss The Action For Lack of Jurisdiction Over The Person

### A. Fiduciary Defendants

 These motions have been filed, inter alia, on behalf of the fiduciary defendants in both actions, i. e., Lawrence, Milton Shubert, William Klein and Sylvia W. Golde as *trustees* of the estate of Lee Shubert, deceased. The basis of the motions is that the fiduciaries act under the authority of the state of New York, are not amenable to and have not consented to suit in this district.

The unimpeached affidavits of these fiduciary defendants establish that they have not been designated or qualified as fiduciaries in any state other than New York; that they have not consented to suit in any other state; that they have not received or administered any assets of the estate; that the trusts of which they are trustees have not been established; that they have not, as trustees, engaged in or transacted any business in Pennsylvania; that no assets of the estate are within this district; that there is no office of the estate within this district.

Lacking any affirmative statement or brief on this subject from the plaintiff, our independent investigation fails to reveal any ground upon which jurisdiction over these fiduciaries can be sustained. Under F.R.Civ.P. 17(b), 28 U.S. C.A., the capacity of an individual acting in a representative capacity to be sued is determined by the law of the state in which the district court is held. If these fiduciaries lack capacity to be sued in Pennsylvania this court is without jurisdiction.

 The general rule at common law is that a foreign personal representative may not be sued on a claim against the decedent's estate in a jurisdiction other than that of his appointment. Although Pennsylvania would appear at first glance to differ, we believe that close analysis of the cases supports the conclusion that, despite an apparent difference, a foreign representative may be sued in Pennsylvania only if there are assets of the estate present there.

In the leading case of Laughlin & Mc-Manus v. Solomon, 1897, 180 Pa. 177, 36 A. 704, a Delaware executor was served in Pennsylvania in an action upon a note. The trial court sustained the defendant's demurrer to the complaint and the Supreme Court reversed. Plaintiff-appellant contended that it could not be assumed in the pleading stage that the executor had no assets of the estate within the state and that evidence might establish the presence of assets within the state when the decedent died or the presence of assets thereafter brought into the state by the executor, in either of which instances the action was maintainable. In apparent acceptance of plaintiff's argument the court distinguished Magraw v. Irwin, 1878, 87 Pa. 139 and declared that case to be in harmony with Pennsylvania law. In Magraw the only assets of the estate ever within Pennsylvania were withdrawn by the executrix after they had been awarded to her as legatee. After her death a foreign administrator c. t. a. was appointed and, having entered the state, was sued. The court held that the succeeding administrator could not be charged in Pennsylvania with assets which had been administered and distributed and that no jurisdiction over the fiduciary was acquired. Of Magraw the Laughlin case said (180 Pa. at page 183, 36 A. at page 705):

> "The decision, therefore, goes no further than the principle * *, that an administrator is not chargeable with assets in another state which have never been within his control * * *."

In the present case the only available evidence is that the fiduciaries have no assets here and are not present in a fiduciary capacity. See, Independent Productions Corp. v. Loew's, Inc., D.C.S.D. N.Y.1957, 148 F.Supp. 460, 462.

In Laughlin there was no evidence of the presence or absence of assets. In Magraw, it was established upon trial that there were no assets within the jurisdiction. We conclude then that, under Pennsylvania law, where it affirmatively appears that no assets of a foreign estate are present in the forum no jurisdiction is acquired over the foreign representatives of the estate. This Circuit has interpreted the Laughlin case as authorizing local suits against foreign representatives only " * * * where claims to property within the jurisdiction of the court are involved." Callwood v. Virgin Islands National Bank, 3 Cir., 1955, 221 F.2d 770, 778.

The motions of the fiduciary defendants will accordingly be granted.

### B. Individual and Corporate Defendants

We consider next the motions of J. J. Shubert, John Shubert and Select Theatre as to whom we have concluded venue was proper.

15 U.S.C.A. § 22, after laying the venue against corporations in anti-trust actions provides that " * * * all process in such cases may be served in· the district of which it [the corporation] is an inhabitant, or wherever it may be found." Once venue is properly established it appears that a defendant corporation may be served at either place designated by the statute, even though those places are outside the district in which suit has been brought.[15]

Extra-territorial service upon Select Theatre in each action was by alias summons in New York where that defendant admittedly had its principal office. This service was proper.[16]

By the provisions of F.R.Civ.P. 4(d) (7) service upon J. J. Shubert and John Shubert was authorized " * * * in the manner prescribed * * * by the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state." In Pennsylvania, Pa.R.Civ.P. 1009(b) (2)(iii), 12 P.S.Appendix, authorizes service upon individuals by handing a copy of the summons or complaint "at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof."

In 21506 J. J. Shubert was purportedly served by leaving a copy of the summons and complaint at 209 Quince Street, Philadelphia "on the desk of woman in charge who refused to give her name or title." In 22092 service was purportedly effected on J. J. Shubert and John Shubert by leaving copies of the summons and complaint at the same address with "Mrs. C. E. Richman woman in charge of Forrest Theatre place of business designated by plaintiff's attorney for service on defendant."

From the affidavits filed by counsel it appears unchallenged that 209 Quince Street is the local office or usual place of business of Barrymore and Modern and that both J. J. Shubert and John Shubert are officers of these corporations.

The rule in this district following the Pennsylvania law, is that the Marshal's return is conclusive and cannot be attacked as false in fact,[17] so that we accept as a fact that the person to

---

15. Eastman Kodak Co. of New York v. Southern Photo Materials Co., 1927, 273 U.S. 359, 373, 47 S.Ct. 400, 71 L.Ed. 684; Pfeiffer v. United Booking Office, Inc., D.C.N.D.Ill.1950, 93 F.Supp. 363, 364–65; Sure-Fit Products Co. v. Fry Products, Inc., D.C.S.D.N.Y.1938, 23 F.Supp. 610, 612; Katz Drug Co. v. W. A Sheaffer Pen Co., D.C.W.D.Mo.1932, 6 F. Supp. 210, 212.

16. Waldron v. British Petroleum Co., Ltd.,

D.C.S.D.N.Y.1957, 149 F.Supp. 830, 836 upheld a similar service in a similar situation. In each action an alias summons was served on Select Theatre by leaving a copy of the complaint and summons with J. J. Shubert, its president, at the corporate office, 236 W. 44th St., New York City.

17. Woods v. Zellers, D.C.E.D.Pa.1949, 9 F.R.D. 6. Accord: Hicklin v. Edwards, 8 Cir., 1955, 226 F.2d 410. Contra:

whom the copies of the summons and complaint were handed was for the time being in charge of the office at 209 Quince Street.

 In Wylie v. McKnight, 10 Beaver C.L.J.145, 153 (Pa.Comm.Pl. 1948) service upon individual defendants by leaving copies of the complaint at the office of a corporation of which they were officers and directors was sustained despite the fact that the defendants lived and transacted their business in a different county.[18] Upon the authority of Wylie, and in view of the fact that the purpose of service is to insure that a defendant will receive actual knowledge of the commencement of the action against him, we conclude that the manner of service upon the two individual defendants was proper.

The motions of Select Theatre and J. J. Shubert in each action will be denied and the motion of John Shubert in 22092 will be denied.

## III. Motions For Summary Judgment

Civil Action 22092 was commenced on February 18, 1957. In that action the defendants Barrymore, Modern and Lawrence have moved for summary judgment under F.R.Civ.P. 56 on the ground that any cause of action arising prior to February 18, 1953 is barred by the applicable statute of limitations, 15 U.S. C.A. § 15b (Supp.1957). Plaintiff contends, however, that the statute of limitations was tolled as to the moving parties by reason of 15 U.S.C.A. § 16(b) (Supp.1957) because an antitrust action, which terminated in a consent judgment, was commenced against the Shubert interests on February 21, 1950.

The motions of Barrymore, Modern and Lawrence in 22092 will be denied without prejudice to their rights to assert the statute of limitations as a defense, in whole or in part, in their responsive pleadings.

## IV. Plaintiff's Motion For Leave To File An Amended Complaint

 Plaintiff has filed this motion in 21506 for the sole purpose of extending to September 1, 1950 the period during which the acts in the original complaint are alleged to have occurred. In other respects the amended complaint is essentially identical with the original and, in its proposed form, is substantially identical with the complaint in 22092.

The defendants in 21506, other than Lawrence, have not filed or served responsive pleadings and, as to them, the plaintiff may amend its complaint as of course. That a responsive pleading was served by one defendant, Lawrence, does not alter this result.[19]

Leave to amend the complaint against Lawrence will be granted without prejudice to his right to assert in his responsive pleading the defenses raised in his motion for summary judgment.

## V. Motions To Vacate Ex Parte Order Permitting Joinder Of Third Party Defendants And To Dismiss The Third Party Complaint

 The essence of the third party complaint in each action is that William Goldman and William Goldman Theatres, Inc., predecessors to plaintiff as lessee of the Erlanger Theatre, conspired with each other to abandon efforts to secure first-run motion pictures for the Erlanger, a function to which that theatre is allegedly better suited. It is alleged that the object of this conspiracy was to afford other theaters operated by William Goldman Theatres, Inc. a competitive advantage over the Erlanger to elim-

Metropolitan Theatre Co. v. Warner Bros. Pictures, D.C.S.D.N.Y.1954, 16 F.R.D. 391; Puett Electrical Starting Gate Corp. v. Thistle Down Co., D.C. N.D.Ohio 1942, 2 F.R.D. 550.

18. See also, Messing v. Messing, 1952, 84 Pa.Dist. & Co.R. 367, 375.

19. F.R.Civ.P. 15(a); see Ginsburg v. 

Stern, D.C.W.D.Pa.1956, 19 F.R.D. 238, 241, order affirmed in part, 3 Cir., 1957, 242 F.2d 379. Certiorari denied 356 U.S. 932, 78 S.Ct. 774, 2 L.Ed.2d 762; Peckham v. Scanlon, 7 Cir., 1957, 241 F.2d 761, 764; Simmons Co. v. Cantor, D.C. W.D.Pa.1943, 3 F.R.D. 197; Pallant v. Sinatra, D.C.S.D.N.Y.1945, 7 F.R.D. 293.

inate it from competition with the other theatres in violation of the anti-trust laws. It is further alleged that William Goldman is president and controls the third party corporate defendant.

This complaint states no claim upon which relief can be granted. It has been decided that a corporation may not conspire with itself, i. e., with its officers, agents and employees. Nelson Radio & Supply Co., Inc., v. Motorola, Inc., 5 Cir., 1952, 200 F.2d 911, 914.[20]

These motions will be granted.

### VI. Motions To Strike Paragraphs 9 and 10 From The Complaints

 Each of the remaining defendants has moved in each action to strike from the complaint paragraphs 9 and 10 upon the grounds that they are irrelevant to any injury allegedly incurred by the plaintiff and are scandalous.

In each complaint these paragraphs allege, in substance, that, as a result of defendants' exclusion of the plaintiff from the presentation of theatrical productions, the defendants have conspired with divers persons to restrain the sale of tickets at regular prices at the ticket offices of their respective theatres in order to oblige prospective patrons to buy tickets from brokers and "ticket scalpers" at prices which exceed the established theatre prices; further, that the defendants have thus been enabled to charge and have charged higher prices for tickets than they would otherwise have been able to charge had they not enjoyed a monopoly—all to the detriment of the public and patrons.

In paragraphs 14 and 16 of the complaints plaintiff alleges that it will be unable to obtain legitimate attractions and has suffered specific pecuniary damage. The prayers for relief demand treble damages, injunctions against interference with plaintiff's right to present theatre attractions and against defendants' alleged unlawful refusal to negotiate for such attractions.

The court is authorized by F.R.Civ.P. Rule 12(f) to order stricken from any pleading, upon motion, matter which is redundant, immaterial, impertinent or scandalous. In Slick Airways, Inc., v. American Airlines, Inc., D.C.1954, 15 F.R.D. 175, Judge Forman aptly expressed the philosophy which this court's experience with antitrust actions leads us to believe should control:

> "* * * pleadings should not be whittled away where the material averred, while not strictly within a rigid interpretation of the rules, is helpful in outlining the background against which the action is laid, particularly, where those allegations are factual and will not impose hardship upon the adverse party to answer or otherwise prejudice him. It is equally obvious that * * * the injection of issues remote from the claim of the plaintiff can serve to lead into tributaries away from the main stream of litigation frustrating the purpose to reduce it to its simplest terms and avert unnecessary expenditures of large amounts of time, money and effort, usual concomitants of court controversies even when most expeditiously administered." 15 F.R.D. at pages 177–178.

For the reasons hereinafter stated we conclude that paragraphs 9 and 10 are remote from and immaterial to the claim of the plaintiff and should be stricken.

 Treble damage actions are authorized to be commenced by persons *injured in their business or property* for

---

20. See also, Packaged Programs, Inc., v. Westinghouse Broadcasting Company, Inc., D.C.W.D.Pa.1957, 156 F.Supp. 76, 78; Central Ice Cream Co. v. Golden Rod Ice Cream Co., D.C.N.D.Ill.1957, 153 F.Supp. 684, 686; Herren Candy Co. v. Curtiss Candy Co., D.C.N.D.Ga. 1957, 153 F.Supp. 751, 755; Beacon Fruit & Produce Co., Inc., v. H. Harris & Co., Inc., D.C.D.Mass.1957, 152 F. Supp. 702, 704; Sperry Rand Corp. v. Nassau Research & Development Associates, Inc., D.C.E.D.N.Y.1957, 152 F. Supp. 91, 93; J. H. Whiteley v. Foremost Dairies, Inc., D.C.W.D.Ark.1957, 151 F.Supp. 914, 923.

the damages sustained by *them.*[21] A complaint in a private civil antitrust action may not allege a violation of the statute and, *ipso facto*, claim damages generally. Specific injury suffered by the plaintiff, differing from that sustained by the plaintiff as a member of the public, must be affirmatively alleged.[22]

The gist of the present complaints is that the defendants conspired to deprive the plaintiff of legitimate theatre attractions with resultant special damage to the plaintiff's business and injury to the public. The plaintiff seeks monetary and injunctive relief. It appears to us that paragraphs 9 and 10 allege a wholly different conspiracy without any affirmative allegation of consequent injury to the plaintiff's business. To the contrary the injury alleged is to the public. If such a conspiracy affecting the public interest does exist the party to take appropriate action under the antitrust laws in the public interest is the Attorney General, not the plaintiff. Beegle v. Thomson, 7 Cir., 1943, 138 F.2d 875 precludes the plaintiff's self-appointment as the public's officer to end the alleged ticket selling conspiracy and to punish the alleged conspirators.

In oral argument plaintiff's counsel strongly urged that this conspiracy discouraged people from attending theatres. The complaints contain no such allegation and the contention of counsel is insufficient to show the "manner, nature, character and extent of the injury sustained" by the plaintiff or specific facts upon which damages might be assessed. Beegle, supra, 138 F.2d at page 881.

The motions to strike will be granted. Counsel will settle and submit orders accordingly.

21. 15 U.S.C.A. § 15.

22. Beegle v. Thomson, 7 Cir., 1943, 138 F.2d 875, 881; Revere Camera Co. v. Eastman Kodak Co., D.C.N.D.Ill.1948, 81 F.Supp. 325, 330–331; Schwartz v. General Electric Co., D.C.S.D.N.Y.1952,

107 F.Supp. 58; Tivoli Realty, Inc., v. Paramount Pictures, Inc., D.C.D.Del. 1948, 80 F.Supp. 800, 805–806; Caldwell-Clements, Inc., v. McGraw-Hill Pub. Co., Inc., D.C.S.D.N.Y.1952, 12 F.R.D. 403, 405.